UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Russell and AtLee
Argued at Richmond, Virginia


DAPHINEY FRANCIS

          MEMORANDUM OPINION[*] BY
v.  Record No. 0094-18-2    JUDGE RANDOLPH A. BEALES
          MARCH 5, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James F. D'Alton, Jr., Judge

Matthew C. Stewart for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


On July 12, 2017, appellant Daphiney Francis was found guilty of "Driving While

Intoxicated, Maiming" ("DUI maiming") under Code § 18.2-51.4 after she struck and severely

injured a pedestrian crossing a street in a pedestrian crosswalk.  On appeal, she contends that the

trial court erred in finding her guilty of DUI maiming "because the evidence at trial failed to

show the appellant drove in a manner so gross, wanton, and culpable as to show a reckless

disregard for human life."

I. BACKGROUND

Viewing the evidence in the light most favorable to the Commonwealth, as we must since

it was the prevailing party in the trial court, Riner v. Commonwealth, 268 Va. 296, 330 (2004),

the evidence at Francis's trial established that, at approximately 7:00 p.m. on November 1, 2014,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Francis struck Juanita Marie Washington with her vehicle as Washington was crossing Industrial Street after completing her shift at the Honeywell plant in the City of Hopewell.

When Officer Christopher Hewett arrived at the scene, he observed an unconscious Washington receiving first aid from Honeywell's emergency medical technicians. He saw Francis's vehicle approximately sixty feet away from the victim. Francis's vehicle had "spun around and the back end of the vehicle had hit a concrete barrier off to the right of the roadway." Francis was standing near the vehicle.

Officer Hewett spoke with Francis, whom he described as "distraught" and "unsteady on her feet." He asked Francis if she was under the influence of any substances, and she told him that she had taken her prescription medication at about six o'clock that morning. She claimed that she was "not under the influence of anything else."

Because she appeared unsteady, Officer Hewett asked Francis if she would submit to a preliminary breath test and asked that she perform some field sobriety tests. Hewett first asked Francis to complete the "alphabet test" by reciting the alphabet starting at "B" and ending at "H." Francis started the test correctly, but instead of stopping at "H" as directed, she continued reciting the alphabet. Hewett then asked Francis to bring her hand up to the tip of her nose with her head held back and her eyes closed. Instead of touching her nose, Francis touched her lip and left her hand there. Francis "then did two to three sequences properly and then she again messed up and touched the bridge of her nose." Finally, Hewett asked Francis to perform "the nine step walk-and-turn." Hewett explained to Francis how this test was performed and demonstrated it for her. When Francis tried, "she was unable to stay on the straight line and was stumbling throughout that."

Officer Hewett placed Francis under arrest and transported her to Riverside Regional Jail. An "intoxilyzer test" was performed thirty minutes after Francis arrived at the jail, and the results of the test measured Francis's blood alcohol content (BAC) at 0.12.[1]

Officer Hewett testified that it was dark and raining when the accident occurred and that the pavement was wet. He also testified that, following the accident, he marked a box on a police crash report that stated that the driver, Francis, had taken "no improper action." He also viewed a video that may have captured the accident and, apparently, did not change his report after seeing it.[2]

Washington testified that she crossed at a pedestrian crosswalk where, although the lighting was poor, there was "a pedestrian light that blinks off and on for traffic, as well as individuals." She testified that she looked both ways before crossing. On cross-examination, she was asked if she recalled that she did not stop before she stepped into the street. She responded, "You know. So, I'm sure I stopped. But did I stop prior to the - - prior to the moment of her hitting me, I can't - - evidently not. She hit me." She was then asked if she would be surprised if a video of the accident showed her stepping into the road without looking left and right. She testified, "No, that's what I've been told."

As a result of the accident, Washington, sustained "an open book pelvic fracture," a broken rib, and muscle damage to her right leg. She was required to stay in the hospital from the day of the accident until mid-February, and she underwent two surgeries. She remained physically disabled at the time of Francis's trial.

---

[1] The certificate of blood alcohol analysis, which the Commonwealth entered as an exhibit at Francis's trial, states that the test was taken at "21:58 ETD" or 9:58 p.m.

[2] Neither the police crash report nor the video that apparently captured the accident were admitted into evidence at Francis's trial. They are not part of the record on appeal.

At trial, Francis argued that the Commonwealth failed "to introduce any evidence of poor driving, of any excessive speed, of any swerving, of any behavior that would fall into those categories; gross, wanton and reckless disregard for human life." In response, the Commonwealth argued that "drinking in and of itself" was sufficient to establish the gross and wanton element of the charge. The trial court directed the parties to prepare briefs on the issue and allowed the parties another opportunity to argue the matter at a hearing on July 12, 2017. Following the hearing, the trial judge found Francis guilty of DUI maiming. He stated, "Well, I think you've got to have more than simply the driving under the influence" and found that in this case:

> there's no indication that the defendant braked or ever saw -- from the evidence before the Court, ever saw this pedestrian who, according to the only testimony before the Court, was legally in the crosswalk. And then there's no evidence that she ever saw the person that she hit and then went some distance away, careened into a building or sidewalk or something not right at the immediate scene.

Francis was sentenced to five years, with three years and nine months suspended. She was also ordered to pay restitution in the amount of $5,785.78.

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full

play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Code § 18.2-51.4 states, in relevant part:

> Any person who, as a result of driving while intoxicated in violation of § 18.2-266 or any local ordinance substantially similar thereto in a manner so gross, wanton and culpable as to show a reckless disregard for human life, unintentionally causes the serious bodily injury of another person resulting in permanent and significant physical impairment shall be guilty of a Class 6 felony.

The sole issue before this Court is whether the evidence was sufficient for the trial court to have found that Francis drove "in a manner so gross, wanton and culpable as to show a reckless disregard for human life." Francis argues that, while high blood alcohol concentrations can be sufficient to establish criminal negligence, "simply being intoxicated at lower blood alcohol concentrations, standing alone, is insufficient to establish criminal negligence" and in this case there is "no further evidence of activity that suggests criminal negligence by" Francis. Francis contends that her case is similar to Coomer v. Commonwealth, 67 Va. App. 537 (2017).

In Coomer, this Court reversed Crystal Ann Coomer's conviction for felony child endangerment because the panel found that the evidence was insufficient to prove that she acted with criminal negligence. Id. at 552. In that case, Coomer and her fiancé had gone out for a "date night" at a restaurant where they were drinking beer. Id. at 540. When Coomer received a phone call from the babysitter of her twenty-two-month-old daughter informing Coomer that the babysitter needed to leave, Coomer quit drinking, ate French fries, and waited twenty minutes before leaving to meet the babysitter at a convenience store. Id. After picking up her daughter, while headed home, Coomer rear-ended another driver. Id. at 541.

The record in Coomer established that it was dark and raining at the time of the accident and that the road was wet and curvy. Id. Neither vehicle incurred any damage in the accident,

and Coomer's daughter appeared to have slept through the entire incident.  Id.  Although the driver of the other vehicle testified that she had only "tapped her brakes," Coomer testified that the other driver had "suddenly slammed on her brakes."  Id.  The officer that reported to the scene had Coomer perform field sobriety tests, which she failed to complete to his satisfaction.  Id. at 541-42.  When she agreed to a preliminary breath test, the test registered her BAC as .097 and an expert at trial estimated from this that her BAC at the time of the accident would have been between .10 and .11.  Id. at 542-43.

On appeal, this Court considered the totality of the circumstances and reversed the trial court's finding of guilt.  It reasoned that there was "*nothing* in Coomer's conduct other than the consumption of alcohol that suggests any negligence on her part."  Id. at 550.  This Court noted that the testimony of the responding officer suggested "that Coomer was not severely impaired," the road conditions contributed to the accident, Coomer reacted fast enough to avoid a more serious accident, and there was evidence Coomer was driving under the speed limit.  Thus, "the only evidence of a gross, wanton, and culpable act of commission or omission such as to show a reckless disregard for human life is that Coomer's BAC was .10," which this Court found was insufficient to support her conviction.  Id. at 551.

Francis argues that, as in Coomer, the accident in this case occurred at night on a rainy evening when the road was wet.  She also points to the fact that Officer Hewett marked that she had taken no improper action on the police crash report to support her argument that the only evidence of her negligence was her BAC.  In addition, Francis argues that Washington's action of stepping out into a poorly lit street without stopping to look for cars was the true cause of the accident.

The Commonwealth, in response, contends that this case is governed by the Supreme Court's decision in Rich v. Commonwealth, 292 Va. 791 (2016).  In Rich, the Virginia Supreme

Court affirmed Rich's conviction for DUI maiming after she struck a man crossing a street in an electric wheelchair. Id. at 795. Evidence was presented that the victim was intoxicated (with a BAC of 0.22) and operating his wheelchair in "an erratic fashion." Id. at 795, 797. Evidence also proved that Rich's BAC measured 0.13 approximately ninety minutes after the accident and that she had performed poorly on the administered field sobriety tests. Id. at 796. Rich also admitted that she had only had two hours of sleep the night before and that she had taken her eyes off the road in order to lean toward her boyfriend so he could light her cigarette. Id. at 795. On appeal, Rich challenged the sufficiency of the evidence of criminal negligence. The Supreme Court affirmed the conviction because her voluntary consumption of alcohol, her level of intoxication, her admitted inattentiveness, and her driving while fatigued showed that she "acted with 'a reckless or indifferent disregard for the safety of others.'" Id. at 802-03.

We agree with the Commonwealth that this case is substantially more similar to Rich than to Coomer because there is more evidence – in addition to Francis's BAC of 0.12 – proving Francis's criminal negligence. Unlike Coomer, who was apparently not as impaired and was able to brake quickly enough that neither car was damaged in the accident, the trial court here found that there was "no indication that the defendant [Francis] braked" at all, despite the fact that Washington was crossing in a pedestrian crosswalk marked by a blinking light. Francis's vehicle continued forward, spun around, and careened into a concrete barrier sixty feet away from the victim, who suffered significant injuries as a result of the accident. Officer Hewett also observed that Francis was unsteady on her feet as soon as he arrived, and she was unable to consistently complete any of the three administered field sobriety tests, illustrating that she was impaired. In addition, although there was no admission of inattentiveness as there was in Rich, the trial judge, as factfinder, was also permitted to consider Francis's lie to Officer Hewett that

she was not under the influence of any substances as an attempt to conceal her guilt.[3] See Black v. Commonwealth, 222 Va. 838, 842 (1981) ("The fact finder need not believe the accused's explanation and may infer that he is trying to conceal his guilt."). The trial judge was also permitted to find that the weight of this evidence outweighed the fact that Officer Hewett marked "no improper action" on the police crash report. Considering the totality of the circumstances in this case, we cannot say that no rational factfinder could have found that Francis acted "in a manner so gross, wanton and culpable as to show a reckless disregard for human life." See Code § 18.2-51.4. Therefore, the trial court did not err in finding that the required criminal negligence was present – and in then finding Francis guilty of DUI maiming.

### III. CONCLUSION

In short, Francis's actions, coupled with her 0.12 blood alcohol content – measured more than thirty minutes after the accident – were sufficient to sustain her conviction for DUI maiming. In addition to having a blood alcohol content well above the legal limit, the evidence established that Francis failed to brake for a pedestrian crossing at a crosswalk marked by a blinking light, careening her vehicle into a concrete barrier and causing the pedestrian to suffer severe injuries. After lying to the responding officer by claiming that she had taken or imbibed nothing to cause her to be under the influence (since taking her prescription medication more than twelve hours earlier), Francis failed to successfully complete three field sobriety tests. Given the totality of these circumstances, we certainly cannot say that no rational factfinder

---

[3] Francis also contends that Washington's negligence was the cause of the accident. Even assuming without deciding that Francis's assignment of error encompasses her causation argument and further that there was even evidence suggesting that Washington was contributorily negligent in causing the accident, that would not alleviate Francis of criminal liability. See Rich, 292 Va. at 800 ("Because an event can have more than one proximate cause, criminal liability can attach to each actor whose conduct is a proximate cause unless the causal chain is broken by a superseding act that becomes the sole cause of the [event]." (quoting Brown v. Commonwealth, 278 Va. 523, 529 (2009))).

could have found that Francis acted with the necessary criminal negligence required for conviction of DUI maiming. For these reasons, therefore, we affirm Francis's conviction.

Affirmed.