UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Senior Judge Petty

VIDAL SHAQUAN MCLAUGHLIN

                                             MEMORANDUM OPINION[*]

v.      Record No. 1492-24-1                       PER CURIAM

COMMONWEALTH OF VIRGINIA              FEBRUARY 3, 2026

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Tonya Henderson-Stith, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Sabina B. Thaler, Assistant
Attorney General, on brief), for appellee.

After a jury convicted Vidal McLaughlin (appellant) of involuntary manslaughter, the

circuit court sentenced him to 10 years' incarceration, with 5 years suspended. Appellant

challenges the sufficiency of the evidence to establish his identity as the perpetrator.[2] Finding no

error, we affirm the judgment.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that

conflicts with the Commonwealth's evidence and regard as true all the credible evidence

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

On May 10, 2020, appellant "ran [his car] off the road and struck a tree" as he attempted to exit from Interstate 64. The vehicle "spun out and came to rest in the right lane of travel." There were no skid marks, and the investigation revealed that "[n]o braking occurred before the accident." The front and passenger side of the car sustained extensive damage, and the airbags had deployed. Appellant's fiancée, Sha'Lynn Walker, was in the front passenger seat and was "stuck in the passenger compartment . . . of [the] vehicle." She was pronounced dead at the scene. Appellant, who was the registered owner of the car, was transported to the hospital. He had injuries to his face, nose, and both knees, and he had "blood on his leg."

Virginia State Police Trooper Jasnique Rolle arrived to investigate and found debris strewn everywhere. After photographing the scene, Trooper Rolle spoke with appellant, who advised that he "had been drinking since 8[:00] a.m. on May 9 . . . th[e] whole day." Appellant said that he had received news of a friend's death, went to the ABC store, bought more alcohol, and drank into May 10. Appellant told Trooper Rolle that he was in the backseat when the crash occurred because he did not feel "okay to drive" and Walker had told him that "he was too drunk to drive." Appellant said that "Tweezy" was driving and explained that Tweezy's real name was Michael Belcher. When shown a picture of Belcher, however, appellant denied that it was of Tweezy. He provided no contact information for Tweezy. The next day, appellant texted Trooper Rolle and advised that the driver was "Stu," not Tweezy, but he also provided no contact information for Stu.

When Trooper Rolle contacted appellant later to ask if he "remembered telling [her] that Tweezy was the driver," he told her that "we're trying to get our stories together, so he is still trying to figure out, you know, who it was or what-have-you." Appellant was subsequently

- 2 -

charged with involuntary manslaughter of Walker while driving under the influence of drugs or alcohol.

At trial, the parties stipulated to the medical examiner's report that Walker was killed in the crash from blunt force trauma. Troopers described collecting forensic evidence for DNA testing, including the driver's side front airbag that had "red staining" on it; a buccal swab from appellant; a state inspection sticker—also stained red—found on the driver's seat; and swabs of the car's gear selector. All forensic samples were submitted to the Department of Forensic Science (DFS) for analysis.

Dr. Autumn Massiello, a forensic toxicologist from DFS, testified that appellant had a blood alcohol concentration of 0.224% by weight by volume, analyzed by blood drawn at the hospital on the night of the crash. She noted that this level was nearly "three times the presumption concentration for alcohol of [0].08"[3] and opined that it would cause "significant to severe effects on a person's cognitive skills, sensory skills, and physical skills." That concentration of alcohol might also cause "memory loss as a result of passing out and blacking out." Further, visual acuity, such as blurred or double vision, physical motor response, coordination, and the ability to "execute a motor response in a timely manner" can be affected.

Dr. Kimberly Freeman, a forensic scientist from DFS, developed DNA profiles from the samples taken from appellant and Walker. She also developed DNA profiles from the evidence collected at the scene and submitted to DFS. After comparing appellant's and Walker's DNA profiles with the evidentiary profiles, Dr. Freeman determined that appellant was the major contributor to the blood stain on the driver's airbag. Regarding the DNA profiles developed from the state inspection document found in the driver's seat and from the car's gear selector,

---

[3] Code § 18.2-269(A)(3) establishes a presumption of intoxication if an individual's blood alcohol concentration is 0.08% or more.

Dr. Freeman determined that appellant was a major contributor and Walker was a minor contributor. The statistical probability of someone other than appellant matching the major profile was "1 in greater than 7.2 billion (which is approximately the world population) in the Caucasian, African American, and Hispanic populations." Further, the statistical probability of finding an unrelated contributor to the minor profile other than Walker was also "1 in greater than 7.2 billion." Walker was eliminated as a contributor to the DNA on the airbag; no other DNA was detected. Dr. Freeman confirmed that, because airbags are sealed in the vehicles, DNA would not be deposited on the airbag unless it is deployed.

At the conclusion of the Commonwealth's evidence, appellant conceded that he had been drinking alcohol but nevertheless moved to strike, arguing that the prosecution failed to prove that he "was the person operating the vehicle while under the influence and as a result unintentionally caused the death of another." The court denied the motion. Without presenting evidence, appellant renewed his motion to strike, which was denied.

The jury convicted appellant of involuntary vehicular manslaughter, and the court sentenced him to 10 years' incarceration, with 5 years suspended.

ANALYSIS

"In the context of a jury trial, a trial court does 'not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact finder.'" *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (alterations in original) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)). "What the elements of the offense are is a question of law that we review de novo." *Diaz v. Commonwealth*, 80 Va. App. 286, 313 (2024) (quoting *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014)). But the sufficiency of the evidence to "prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.* (quoting *Linnon*, 287 Va. at 98).

A defendant "who, as a result of driving under the influence . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter." Code § 18.2-36.1(A). The Commonwealth must prove the elements of driving under the influence[4] to establish a violation of Code § 18.2-36.1(A). *See Lambert v. Commonwealth*, 298 Va. 510, 514 (2020). Appellant argues that although the statute "does not require proof of criminal negligence," the "Commonwealth patently failed to establish that . . . Walker's accidental killing was the proximate result of [appellant]'s operation of a vehicle."

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The question on appeal is not if the Court believes the evidence at trial was sufficient, but rather if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cappe v. Commonwealth,* 79 Va. App. 387, 398 (2024) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Id.* at 398-99 (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)). We find that the evidence was sufficient to support appellant's conviction.

---

[4] Code § 18.2-266.

I. Appellant was the driver of the car.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). Appellate review "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Garrick*, 303 Va. at 183 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512 (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468, (2000)). "A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any." *Garrick*, 303 Va. at 184 (quoting *Toler v. Commonwealth*, 188 Va. 774, 780 (1949)). The "combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* (alteration in original) (quoting *Moseley*, 293 Va. at 463).

Appellant was the registered owner of the car. He and his fiancée, Walker, were the only individuals at the scene of the catastrophic crash. Walker was found pinned in the front passenger seat. Subsequent forensic analysis determined that appellant was the major contributor to the DNA profile of the driver's airbag; Walker was eliminated as a contributor to that profile, and no other DNA was detected. Appellant was the major contributor to the DNA profile of the blood stain on the state inspection document found in the driver's seat; Walker was a minor contributor and the only other contributor to the DNA profile. The DNA swabs from the gear selector revealed that appellant was the major DNA contributor and Walker was a minor contributor. There were no other contributors to the DNA profiles.

From these circumstances, a reasonable juror could find that appellant was driving the car and Walker was the sole passenger. Appellant had injuries to his face, nose, knees, and "blood on his leg." A fact finder could infer that those injuries were consistent with being struck by a deployed airbag in the driver's seat. He told Trooper Rolle that he had been in the backseat of the car but repeatedly changed his statement about the identity of the driver and later said he and Tweezy were "trying to get our stories together, so he is still trying to figure out, you know, who it was or what-have-you." Given the inconsistencies in appellant's statements and the compelling forensic results, the jury was "entitled to disregard" his "self-serving" statements and infer that appellant was "lying to conceal his guilt." *Jordan v. Commonwealth*, 84 Va. App. 446, 478 (2025). Accordingly, we find sufficient evidence that appellant was driving at the time of the fatal crash.

II. Appellant was driving under the influence of alcohol.

Code § 18.2-266 makes it "unlawful for any person to drive or operate any motor vehicle . . . while . . . under the influence of . . . any . . . self-administered intoxicant . . . to a degree which impairs his ability to drive or operate any motor vehicle . . . safely." *See Lambert*, 298 Va. at 514. Here, appellant admitted that he had been drinking since 8:00 a.m. on May 9, 2020 and was still drinking on May 10, 2020. Appellant told the trooper that Walker had said he was "too drunk to drive." His blood alcohol, measured after the crash, was 0.224% by weight by volume. Dr. Massiello testified that, at that level, there would be significant to severe effects on a person's cognitive, sensory, and physical skills. Although there were no eyewitnesses, we find that the jury reasonably concluded from the circumstantial and the forensic evidence that appellant was driving under the influence of alcohol at the time of the fatal crash.

III.  Appellant caused Walker's death.

The final element of involuntary manslaughter, causing the death of another person, was undisputed at trial.  Indeed, the parties stipulated to the medical examiner's report that Walker was killed in the crash from "blunt force trauma" when the car "ran off the road and struck a tree."

CONCLUSION

Accordingly, we affirm the circuit court's judgment.

*Affirmed.*